In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-17-00248-CV
_____

THE SINCLAIR GROUP, LTD., H.L. SINCLAIR
AND WHITNEY FOX, Appellants

V.

HENRI HAGGBLOM, Appellee

On Appeal from the 284th District Court
Montgomery County, Texas
Trial Cause No. 17-04-04582-CV

OPINION

In this interlocutory appeal, The Sinclair Group, Limited, H.L. Sinclair and Whitney Fox (collectively, Sinclair) appeal from an order denying their joint motion to compel arbitration of their claims, which relate to their dispute with Henri Haggblom, an individual who was employed as the manager of The Sinclair Group, Limited (The Sinclair Group) and the Sinclair Group Texas, LLC (the LLC). *See*

1

Tex. Civ. Prac. & Rem. Code Ann. § 171.098(a)(1) (West 2011) (authorizing interlocutory appeals from rulings on applications to compel arbitration subject to the Texas Arbitration Act). The claims Sinclair asked the trial court to refer to arbitration concerned primarily whether the appraiser who was employed by the parties to evaluate the fair market value of Haggblom's membership interest in The Sinclair Group followed the method of appraisal set out in the written agreements that he had with The Sinclair Group and the LLC. The record reflects that the written agreements relevant to Haggblom's employment included arbitration provisions, which required the parties to arbitrate "[a]ny and all disputes, controversies, or claims arising out of or relating to this Agreement, including without limitation, claims based on contract, tort, or statute[.]"

We hold the trial court erred by denying Sinclair's motion to compel arbitration regarding the parties' dispute. Accordingly, we reverse the trial court's order and remand the cause to the trial court, with instructions ordering the parties to resolve through arbitration their dispute over whether the appraiser followed the method of appraisal that is required in the parties' written agreements, which specifically addressed the method to be used in valuing a limited partner's membership interest in The Sinclair Group.

2

## Background

Haggblom signed a "Company Agreement" when he began employment to be one of two managers of the LLC, which is the general partner of The Sinclair Group. The Company Agreement includes a provision restricting the rights of a member owning an interest in The Sinclair Group from disposing of that interest through a method other than the one that is provided under the Company Agreement. Under the Company Agreement, The Sinclair Group had a five-year period from the date Haggblom signed the agreement to purchase the interest of any member with an ownership interest in The Sinclair Group who no longer worked there. The Company Agreement included a provision containing a formula to be used to calculate the value of a limited partner's interest in The Sinclair Group. The Company Agreement required that the parties select an "accredited Business Valuator" (appraiser), and required the appraiser to then calculate the fair market value of the limited partner's interest in The Sinclair Group by using a specific formula that included criteria allowing the appraiser to consider certain matters but preventing the appraiser from considering others. The Company Agreement includes an arbitration provision, which provides that the parties shall arbitrate "[a]ny and all disputes, controversies, or claims arising out of or relating to this Agreement, including without limitation, claims based on contract, tort, or statute[.]"

3

Approximately eight months after signing the Company Agreement, Haggblom signed an "Employment Agreement" with The Sinclair Group. Under the Employment Agreement, Haggblom acquired a "5% Partnership Interest" in The Sinclair Group. The Employment Agreement reflects that Haggblom was being employed to manage the business of the LLC. The Employment Agreement also has an arbitration provision that is identical to the one in the Company Agreement.

In 2015, Sinclair terminated Haggblom's contracts. At that time, The Sinclair Group exercised its right to purchase Haggblom's partnership interest in The Sinclair Group. The record that was before the trial court when it ruled on Sinclair's motion to compel arbitration shows that after Haggblom was terminated, the parties retained a consulting firm to appraise "the fair market value" of Haggblom's five percent limited partnership interest in The Sinclair Group, as of December 31, 2015. In April 2016, the appraiser provided the parties with a draft of his appraisal on Haggblom's partnership interest in The Sinclair Group, which placed a fair market value on Haggblom's interest at an amount exceeding $1,000,000.

In June 2016, Sinclair sent the appraiser's consulting firm a letter complaining the appraiser had failed to follow "the agreements of Sinclair Group and Mr. Haggblom relative to [valuing Haggblom's interest]." Sinclair demanded that the consulting firm "withdraw from this engagement without issuing any further draft

4

reports or opinions or any final reports or opinions." The record does not show that the appraiser ever finalized his April 2016 draft report or issued a final report.

In April 2017, Haggblom sued Sinclair in Montgomery County, Texas, seeking to recover a judgment against Sinclair based on the value of his interest as determined by the appraiser in his April 2016 draft report. In the suit, Haggblom asked the trial court to confirm the appraiser's determination and render a judgment against Sinclair based on the opinion regarding the value expressed by the appraiser. Haggblom's petition alleges the appraiser's opinion regarding value was final because the Company Agreement states that the appraiser's determination "shall be binding upon the parties." Haggblom also asked the trial court to declare that Sinclair's complaints about the appraiser's method was not arbitrable and that the appraiser's "award" was final.

In May 2017, when Sinclair responded to Haggblom's suit, it filed a motion to compel arbitration. Additionally, Sinclair asked the trial court to stay all judicial proceedings, pending the arbitration of its claim alleging the appraiser had not followed the method of appraisal required by the parties' written agreements. Sinclair's motion to compel arbitration alleges that the appraiser the parties selected to appraise the value of Haggblom's partnership interest "failed to follow the instructions contained in the controlling agreements." According to Sinclair, its

5

dispute regarding whether the appraiser followed the correct method when he appraised Haggblom's partnership interest is an arbitrable claim, given the broad scope of the arbitration agreements in the Company Agreement and the Employment Agreement.

In early June 2017, Haggblom filed his response to Sinclair's motion to compel arbitration. In his response, Haggblom argued that his written agreements with Sinclair provide "for a separate, binding mechanism by which to determine the value of [his] interest in the Sinclair Group[,]" and he suggested the "parties intended and agreed to except the valuation process from arbitration."

After conducting a non-evidentiary hearing on Sinclair's motion, the trial court took the case under advisement. Approximately one week later, the court denied Sinclair's motion. The trial court did not explain in the hearing or in its order the basis for its ruling. Subsequently, Sinclair pursued an interlocutory appeal and seeks an order to compel the parties to arbitrate their dispute.

Standard of Review

Under Texas law, a written agreement to arbitrate is valid and enforceable if an arbitration agreement exists and the claims a party seeks to have arbitrated are claims that fall within the scope of parties' arbitration agreement. Tex. Civ. Prac. & Rem. Code Ann. §§ 171.001, 171.021 (West 2011). "To determine whether a party's

6

claims fall within an arbitration agreement's scope, we focus on the complaint's factual allegations rather than the legal causes of action asserted." *In re FirstMerit Bank*, *N.A.*, 52 S.W.3d 749, 754 (Tex. 2001) (orig. proceeding). Because the public policy of the State strongly favors arbitration, a court should not deny a request to order the parties to arbitrate when a valid agreement to arbitrate exists unless the arbitration clause is not susceptible to being interpreted in a manner that would require the parties to arbitrate their dispute. *See Williams Indus., Inc. v. Earth Dev. Sys. Corp.*, 110 S.W.3d 131, 137 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (applying the Texas Arbitration Act).

A party seeking to compel arbitration must show that "(1) there is a valid arbitration agreement and (2) the claims raised fall within that agreement's scope." *Granite Re Inc. v. Jay Mills Contr. Inc*, No. 02-14-00357-CV, 2015 Tex. App. LEXIS 4182, *7 (Tex. App.—Fort Worth 2015, no. pet.) (mem. op.) (citing *In re Kellogg, Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding)); *see also Valero Energy Corp. v. Teco Pipeline Co.*, 2 S.W.3d 576, 581 (Tex. App.—Houston [14th Dist.] 1999, no pet.); Tex. Civ. Prac. & Rem. Code Ann. § 171.001(a). Once the party moving for arbitration establishes that a valid arbitration agreement exists, the burden of showing that the dispute is one that is not arbitrable falls on the party opposed to referring the matter to arbitration. *Prudential Sec. Inc. v. Marshall*,

909 S.W.2d 896, 900 (Tex. 1995) (orig. proceeding) (applying the Federal Arbitration Act); *McReynolds v. Elston*, 222 S.W.3d 731, 740 (Tex. App.—Houston [14th Dist.] 2007, orig. proceeding) (applying the Texas Arbitration Act). To determine whether the dispute at issue falls within the scope of arbitration, courts are required to focus on the facts that are alleged in the pleadings, not the legal causes of action that have been pleaded. *McReynolds*, 222 S.W.3d at 740. A strong presumption exists favoring arbitration, so courts are required to resolve doubts regarding arbitrability in favor of referring the dispute to arbitration. *Ellis v. Schlimmer*, 337 S.W.3d 860, 862 (Tex. 2011) (per curiam).

When reviewing a trial court's decision on a motion to compel arbitration, the ruling is reviewed under a de novo standard. *Lexington Ins. Co. v. Exxon Mobil Corp.*, No. 09-16-00357-CV, 2017 Tex. App. LEXIS 3819, *11 (Tex. App.—Beaumont 2017, no pet.) (mem. op.) (citing *Tex. Petrochemicals LP v. ISP Water Mgmt. Servs. LLC*, 301 S.W.3d 879, 884 (Tex. App.—Beaumont 2009, no pet.)); *McReynolds*, 222 S.W.3d at 740.

## Is Sinclair's Claim Arbitrable?

In the trial court, Haggblom and Sinclair agreed the arbitration agreements they signed were valid. Given the agreement that a valid arbitration agreement existed, the trial court was required to resolve "any doubts as to the agreement's

8

scope, waiver, and other issues unrelated to [the arbitration agreement's validity] in favor of arbitration." *Ellis*, 337 S.W.3d at 862. And, where the disputed matter falls within the scope of the matters the parties agreed to arbitrate, a "'court has no discretion but to compel arbitration and stay its own proceedings.'" *Forest Oil Corp. v. McAll*en, 268 S.W.3d 51, 56 (Tex. 2008) (quoting *In re FirstMerit Bank*, 52 S.W.3d at 753-54) (explaining the process that is required to resolve an appeal involving a contract governed by the Texas Arbitration Act)).

With respect to the arbitration clauses in the written agreements before the trial court in this case, both agreements required the parties to arbitrate "[a]ny and all disputes, controversies, or claims arising out of or relating" to the Agreements. Broad arbitration provisions, like the arbitration provisions before us in this appeal, required the trial court to favor ordering the dispute, which concerns whether the appraiser followed the appraisal method in the agreements, into arbitration. *See Dewey v. Wegner*, 138 S.W.3d 591, 602-603 & n.20 (Tex. App.—Houston [14th Dist.] 2004, orig. proceeding) (citing *AutoNation USA Corp. v. Leroy,* 105 S.W.3d 190, 196 (Tex. App.—Houston [14th Dist.] 2003, no pet.)); *see also In re Jim Walter Homes, Inc.*, 207 S.W.3d 888, 895 (Tex. App.—Houston [14th Dist.] 2006, orig. proceeding).

In Haggblom's case, the heart of the parties' dispute concerns whether the appraiser complied with the appraisal method established in the parties' written agreements. The written agreements specify the criteria the parties expected the appraiser to use in appraising the value of a partner's interest, and both Haggblom and Sinclair, as a matter of contract law, had the right to expect the appraiser to comply with the method the parties outlined in their agreements. Given the broad language in the arbitration agreements, the dispute falls clearly within the scope of the disputes the parties chose to arbitrate.

In his brief, Haggblom suggests the appraiser's opinion was final and that it could not be attacked for the reason Sinclair suggests. To support this argument, Haggblom relies on a provision in the appraisal provision that states the appraiser's "determination of the [fair market value] . . . shall be binding upon the parties." While the term "binding" indicates the parties intended the process to be one that could not be broken, that same expectation exists whenever a party enters into a legal agreement. While the parties to contracts generally always intend their agreements to be binding, such agreements may prove not to be binding on the parties for numerous reasons, including when one of the parties breaches a term that is material to the agreement.

In this case, the "binding" nature of the appraisal process presumed that the appraiser would follow the appraisal method imposed on the appraisal process by the parties' written agreements. And, this is the matter in dispute, since Sinclair alleges that the appraiser failed to comply with the method established by the parties in their written agreements. Importantly, the language the parties chose to use in their arbitration agreements also contains no language that expressly excludes this type of dispute from the express requirement that all disputes be arbitrated.

"Generally, if the facts alleged in a claim 'touch matters' that are covered by, have a 'significant relationship' to, are 'inextricably enmeshed' with, or are 'factually intertwined' with the contract that contains the arbitration agreement, the claims are arbitrable." *Tex. Petrochemicals LP*, 301 S.W.3d at 885 (citing *In re Bath Junkie*, 246 S.W.3d 356, 366 (Tex. App.—Beaumont 2008, orig. proceeding)). While some tension exists between the "shall be binding" language that is in the appraisal provision and the "any and all disputes" language found in the arbitration agreements, Texas law requires that we resolve all doubts about whether a dispute is arbitrable in favor of requiring the parties to arbitrate their dispute. *See Ellis*, 337 S.W.3d at 862.

Given the scope of the arbitration agreement, whether the appraiser followed the method called for by the parties' written agreements is a dispute that must be

11

decided in arbitration. Depending on the arbitrator's resolution of that dispute, Sinclair might ask the arbitrator to require an appraisal that employs the method of appraisal found in the parties' written agreements. Should Haggblom prevail, he might ask the arbitrator to accept the draft report. Regardless of the arbitrator's resolution of that dispute, the parties' claims are arbitrable in light of the broad and inclusive language that Sinclair and Haggblom used in the arbitration provisions they chose to include in both their Employment and Company Agreements.

## Conclusion

We conclude the trial court erred when it denied Sinclair's motion to compel arbitration. *See Hoskins v. Hoskins*, 497 S.W.3d 490, 494 (Tex. 2016) (noting that Texas law favors arbitration); *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 521 (Tex. 2015) (noting that both Texas and federal law recognize a strong presumption favoring the arbitration of disputes). Considering the broad scope of the language in the parties' arbitration agreements, we conclude that the dispute over whether the appraiser failed to follow the appraisal method established by the parties in their written agreements is an arbitrable issue.

We reverse the trial court's order denying Sinclair's motion to compel arbitration, and we remand the cause to the trial court with instructions to render an order compelling Sinclair and Haggblom to arbitration to resolve their dispute about

whether the appraiser failed to follow the appraisal method that the parties created under their written agreements.

REVERSED AND REMANDED.

_____
HOLLIS HORTON
Justice

Submitted on December 20, 2017
Opinion Delivered April 12, 2018

Before Kreger, Horton and Johnson, JJ.